UNITED STATES DISTRICT COURT
IN THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ASYMMETRX, INC. and PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>*Plaintiffs*,<br><br>v.<br><br>DAKO DENMARK A/S and DAKO NORTH AMERICA, INC.,<br><br>*Defendants*. | Civil Action No: 1:09-cv-10396 (WGY) |

**JOINT PRE-TRIAL MEMORANDUM**

Pursuant to Rule 16.5(d) of the Local Rules of the U.S. District Court for the District of Massachusetts, the parties hereby submit this Joint Pre-Trial Memorandum.

1. **Concise Summary of the Evidence**

    a. **Plaintiffs AsymmetRx, Inc. ("AsymmetRx") and President and Fellows of Harvard College ("Harvard")**

This is a patent infringement case. Harvard granted AsymmetRx an exclusive commercial license under U.S. Patent Nos. 6,946,256 ("the '256 Patent") and 7,030,227 ("the '227 Patent") to sell p63 antibodies in the diagnostic market. Harvard granted Dako Denmark A/S and Dako North America, Inc. (collectively "Dako") a non-exclusive license to sell p63 antibodies in the research market only ("License Agreement"). Nonetheless, the evidence will show that Dako has sold and continues to sell p63 antibodies in the diagnostic market, willfully infringing the '256 and '227 Patents.

As discussed in AsymmetRx's Motion for Summary Judgment, there is no question that

Dako is infringing the '227 Patent. In fact, Dako has not produced any evidence to suggest that it intends to raise at trial that the p63 it sells is not covered by the '227 Patent. Instead, Dako admits that it is in possession of the hybridoma clone 4A4, that the hybridoma clone 4A4 was supplied by Harvard, and that the p63 antibodies sold by Dako are produced by the hybridoma clone 4A4 supplied to Dako by Harvard. AsymmetRx will present expert testimony that the p63 antibodies sold by Dako for diagnostic purposes infringe at least claims 1 and 16 of the '227 Patent, in addition to the method claims noted in AsymmetRx's response to Dako's Interrogatory No. 1.

In addition, the evidence will satisfy the willfulness standard set forth by *In re Seagate Technology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007), that Dako has exhibited reckless disregard for an objectively high risk of infringement by clear and convincing evidence. While Dako will attempt to hide behind the "research use only" label on its p63 product, that does not absolve it of liability when its sales force actively promotes and sells p63 as a diagnostic tool. Similarly, the evidence will confirm that Dako induced its customers to infringe the diagnostic methods covered by claims 1-2, 6-9, 12-15 and 17-20 of the '256 Patent by promoting the use of p63 as a diagnostic tool – and particularly by its promotion as a component of a highly effective cocktail, when combined with Dako's p504s product for prostate cancer diagnosis.

AsymmetRx seeks $5 million in lost profits based on an exclusive distribution agreement that was terminated due to Dako's presence in the p63 diagnostic market. Alternatively, AsymmetRx seeks a reasonable royalty totaling $1,121,461, based on an upfront payment of $1 million and royalties in the range of 15-20%. In support of these claims, Dr. Robert Vigil will testify on behalf of AsymmetRx.

AsymmetRx will also demonstrate that it is entitled to a permanent injunction because (1)

it has suffered irreparable injury by Dako's illegal sales in the diagnostic market, since those sales have kept AsymmetRx out of the market; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury, because Dako is competing with AsymmetRx and is thus preventing AsymmetRx from granting Dako a commercially valuable license and from marketing its own product competitively; (3) considering the balance of hardships, a remedy in equity is warranted, since Dako can stop its sales instantly, with no serious impact to its business, whereas AsymmetRx is a small company, and delay is risking its viability; and (4) the public interest would not be disserved by a permanent injunction, since the public interest favors the protection of patent rights and respect for contractual rights and obligations. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *Esso Standard Oil Co. v. Lopez-Freytes*, 522 F.3d 136, 148 (1st Cir. 2008). Accordingly, AsymmetRx seeks a permanent injunction to prevent Dako from selling p63 antibodies in the diagnostic market.

Dako raises patent invalidity as an affirmative defense, and has the burden of proving its affirmative defense of invalidity by clear and convincing evidence. Despite this, Dako has done **<u>nothing</u>** to contest the validity of the two patents-in-suit. Dako did not submit an expert report regarding invalidity of the '227 and '256 Patents, nor has it identified any prior art asserting invalidity as required by 35 U.S.C. § 282.

Dako has also pleaded laches, equitable estoppel, unclean hands, implied license and/or waiver as affirmative defenses, but the evidence supports no finding of these affirmative defenses here. Indeed, at trial, a Harvard witness will confirm the testimony of Dako's 30(b)(6) witness – that Harvard referred Dako to AsymmetRx to discuss Dako's sales outside the scope of its license, and the availability of a sub-license from AsymmetRx. It was only when those licensing discussions failed that this lawsuit was initiated. Dako cannot allege that any delay was

prejudicial, since it has been allowed to continue its infringing sales during this period.

In addition, Dako has not plead a license as an affirmative defense as required by Fed. R. Civ. P. 8(c)(1). Failure to plead an affirmative defense generally results in waiver of the defense and its exclusion from the case. *Conjugal Partnership v. Conjugal Partnership*, 22 F.3d 391, 400 (1st Cir. 1994); *Knapp Shoes, Inc. v. Sylvania Shoe Mfg Corp.*, 15 F.3d 1222, 1226 (1st Cir. 1994).

### b. Defendant Dako Denmark A/S and Dako North America, Inc. (collectively, "Dako")

This is a patent infringement case in which all parties agree that the Defendants, Dako have a limited license to practice the asserted patents. It is also undisputed that a non-party, Biocare Medical LLC ("Biocare") has an unlimited license to the asserted patents. The infringement issues focus on whether the plaintiffs' can prove that Dako has infringed by operating outside of that license and even so, whether Harvard has waived their rights to protest. Dako also disputes that Plaintiffs have provided sufficient evidence show that Dako's products and Dako's actions are covered by the patents in suit. Regarding damages, the central issue is whether, in view of Biocare and their own business activities, the plaintiffs are prohibited from collecting lost profits and are limited to a reasonable royalty on some small percentage of Dako's accused sales, which are less than $1,000,000.00 dollars.

On June 1, 1999, Harvard granted Dako a limited, non-exclusive license "to make, use, and sell" p63 antibodies in the life science reagent market. (Doc. No. 21-8, at § 2.1.) The license grant included the applications which became the '256 and '227 patents. (*Id.*, at § 1.4.) The Dako license excluded "[c]ommercial use in the human or animal diagnostic or therapeutic markets, which are subject to regulatory approval by the US FDA." (*Id.*, at § 1.7.) Harvard also granted nonexclusive licenses to a number of other parties. As this Court recently determined,

one of those licenses, granted to Biocare in 2002, was *not* limited to any particular market.  *See AsymmetRx*, 578 F. Supp.2d at 340.

On June 30, 2004, Harvard granted *AsymmetRx* an "exclusive" license for the "[s]ale of clinical diagnostic products and services based on detecting p63 expression or mutation."  (Doc. No. 21-7, at ¶¶ 1.4, 3.1.)[1]  Like the earlier licenses (to Dako, Biocare, and others), the Harvard license to *AsymmetRx* included the applications which became the '256 and '227 patents.  (*Id.*)

The '256 patent issued on September 20, 2005, and the '227 patent issued on April 18, 2006.

Dako's Sales and Marketing of p63 Products

At all times since the patents-in-suit issued, Dako has limited sales of its p63 products to "research use only."  The package inserts for the p63 antibodies are labeled, at the top of the package insert, with the restriction:  "For research use only.  Not for use in diagnostic procedures."  Under "Precautions," the labels further state:

> 1.  The device is not intended for clinical use including diagnosis, prognosis, and monitoring of a disease state, and it must not be used in conjunction with patient records or treatments.

At all times since early 2005, Dako's labels for its p63 products have included these specific restrictions, in accordance with the limitations of its license from Harvard.  Contrary to AsymmetRx's assertions Dako has never admitted to selling p63 antibodies in the diagnostic market" during the term of the patents-in-suit.

Harvard Has Acquiesced to Dako's Sales of the p63 Products

In late 2006, Harvard raised objections to some of Dako's sales activities and customers, similar to the objections raised in AsymmetRx's current motion.  Dako responded to Harvard's

---

[1]  In fact, Harvard's license to AsymmetRx was not "exclusive," since Harvard had previously granted an unrestricted license to Biocare.  *See AsymmetRx*, 578 F. Supp.2d at 340.

objections, making certain corrections to its product labeling, but did not discontinue its sales. Harvard ultimately dropped its demands and continued accepting royalty checks without complaint for the past several years.

Regarding damages, Dako has made less than $1,000,000 in domestic p63 sales, and has paid a 10% royalty on such sales to Harvard. Neither AsymmetRx nor its purported distributor has made any p63 sales. By its own admission AsymmetRx has, at all relevant times had zero p63 market share. AsymmetRx admits that it is speculative whether it would have made any of Dako's sales and further admits that Biocare had the manufacturing capacity to keep pace with Dako's sales. Under these circumstances, AsymmetRx legally precluded from collecting any lost profit damages.

A reasonable royalty is strongly guided by the former and existing p63 licenses between Harvard and its various licenses, which all suggests damages far beneath the figure AsymmetRx seeks. Dako's additional defenses to AsymmetRx's damages claims will be informed by its expert's report regarding damages.

**2. Facts Established by Pleadings or By Stipulation or Admissions of Counsel**

The parties stipulate to the following facts:

U.S. Patent No. 6,946,256 ("the '256 Patent), entitled, "Cell Regulatory Genes, Encoded Products, And Uses Related Thereto," issued to Frank McKeon, et al., on September 20, 2005.

U.S. Patent No. 7,030,227 ("the '227 Patent), entitled, "Cell Regulatory Genes, Encoded Products, And Uses Related Thereto," issued to Frank McKeon, et al., on April 18, 2006.

The '256 and '227 Patents relate to p63 specific antibodies and methods for using p63 antibodies to detect malignant carcinoma.

Harvard granted AsymmetRx a commercial license for the p63 antibodies in the

diagnostic field under the '256 and '227 Patents.  AsymmetRx's License Agreement, at §3.1.

Harvard and Dako entered into a License Agreement on or around May 24, 1999, which grants Dako a non-exclusive license to sell p63 antibodies:

> HARVARD hereby grants to DAKO, and DAKO accepts, subject to the terms and conditions hereof, a non-exclusive worldwide license, without the right to sublicense, to use the BIOLOGICAL MATERIALS under PATENT RIGHTS, to research, develop, make, use, and sell LICENSED PRODUCTS in the FIELD.

Dako's License Agreement, at §2.1.

Dako's License Agreement defines the field of the agreement as follows:

> FIELD means the life science reagent market.  Commercial use in the human or animal diagnostic or therapeutic markets, which are subject to regulatory approval by the US FDA or foreign equivalents in the country of use, is specifically excluded from the FIELD.

Dako's License Agreement, at §1.7.

PATENT RIGHTS includes both the '256 and the '227 Patents.  PCT Application Serial No. PCT/US98/21992, filed on 10/02/98, lead to the issuance of the '227 Patent, and U.S. Patent Application Serial No. 09/174,493, filed on 10/15/98, lead to the issuance of the '256 Patent. *See id.* at §1.4.

Dako is in possession of the hybridoma clone 4A4, which was supplied by Harvard.  The p63 antibodies sold by Dako are produced by the hybridoma clone 4A4 supplied to Dako by Harvard.

Harvard has accepted all royalty payments made by Dako pursuant to the Harvard-Dako License Agreement and has not refused or rejected any royalty payments made by Dako pursuant to the Harvard-Dako License Agreement since September 20, 2005.

### 3. Contested Issues of Fact and/or Law

Infringement, willful infringement, inducement, contributory infringement, implied license, equitable estoppel, waiver, laches, and damages require a trial.

Contested infringement issues include: (a) whether any of Dako's customers used p63 purchased from Dako for non-licensed, diagnostic applications; (b) whether Dako actively induced those customers to use its p63 for non-licensed diagnostic applications by knowingly aiding and abetting in its customers' direct infringement.

### 4. Jurisdictional Questions

Whether AsymmetRx and/or Harvard have standing.

### 5. Questions Raised by Pending Motions

To date, the following motions are pending for decision by the Court:

    a. Plaintiff AsymmetRx's Partial Motion for Summary Judgment on Patent Infringement and No Invalidity.

    b. Defendants' Motion to Dismiss or Stay Proceedings and Compel Arbitration.

In addition, Defendants state that they will file prior to the final pretrial conference, the following motions:

    c. Defendants' Motion for Summary Judgment of Non-infringement, Equitable Estoppel, and Lost Profits.

    d. Defendants' Motion for Leave to Amend its Answer

    e. Defendants Motion *in limine* to Exclude Evidence of Argument that Biocare Does Not Have a License to Sell in the Diagnostic Market

    f. Defendants Motion *in limine* to Exclude Evidence of Argument Concerning a Hearsay Customer Survey

    g. Defendants Motion *in limine* to Exclude Evidence of Argument Concerning Duke University Medical Center

### 6. Issues of Law

Plaintiffs state that the contested issues of law are briefed in the filings respecting AsymmetRx's Motion for Summary Judgment. Defendants state the contested issues of law are briefed in the filings concerning their forthcoming Motion for Summary Judgment and their opposition to Plaintiffs' Motion for Preliminary Injunction. Both sides will submit proposed jury instructions in accordance with Local Rule 16.5(f). In addition, Plaintiffs state that they intend to file motions *in limine* to address further evidentiary findings.

### 7. Requested Amendments to the Pleadings

None at this time, although Dako has indicated its intent to file a Motion to Amend its Answer.

### 8. Additional Matters to Aid in the Disposition of the Action

The parties are discussing ways to permit use of evidence at trial while protecting confidential information under the protective order in this case. Plaintiffs also intend to invoke Federal Rule of Evidence 615 to exclude witnesses so that they cannot hear the testimony of other witnesses.

### 9. The Probable Length of the Trial

Plaintiffs expect that its case-in-chief will take approximately five days to present, assuming full trial days and depending on the amount of time for Defendant's cross-examination. Defendants expect that their case-in-chief will take approximately four days assuming full trial days and depending on the amount of time for Plaintiffs' cross-examinations.

### 10. Names, Addresses and Telephone Numbers of Witnesses

Plaintiffs' Joint Witness List is attached as Exhibit A. Defendants' Witness List is attached as Exhibit B. Plaintiffs reserve the right to amend this list, depending on certain

depositions that are to occur in the coming weeks, and reserve the right to object to any witnesses designated by Dako.

### 11. Proposed Exhibits

Plaintiffs' Joint Exhibit List is attached at Exhibit C.  Defendants' Joint Exhibit List is attached as Exhibit D.  Plaintiffs' contend that discovery is ongoing, and that they may reserve the right to add additional exhibits, if necessary.

### 12. Parties' Positions on any Remaining Objections to the Evidence Identified in the Pre-Trial Disclosures

Plaintiffs' objections to Defendant's Exhibit List are attached as Exhibit E.  Defendant's objections to Plaintiffs' Joint Exhibit List are attached as Exhibit F.  Defendants' objections to Plaintiffs' Witness List and Deposition Designations is attached as Exhibit G.

### 13. Parties' Deposition Designations

Defendants' deposition designations are attached as Exhibit H.  Plaintiffs' contend that they may reserve the right to designate and counter-designate at a later time.

| | |
|---|---|
| DATED:  June 16, 2009 | PROSKAUER ROSE LLP<br><br>By: /s/ *Steven M. Bauer*<br>      Steven M. Bauer (BBO # 542531)<br>      Amy Crafts (BBO# 667844)<br>      PROSKAUER ROSE LLP<br>      One International Place, 22nd Floor<br>      Boston, Massachusetts 02110<br>      Tel:  (617) 526-9600<br>      Fax:  (617) 526-9899<br>      Attorneys for Plaintiff ASYMMETRX, INC. |
| DATED:  June 16, 2009 | GOODWIN PROCTER LLP<br><br>By: /s/ *Daryl L. Wiesen*<br>      Daryl L. Wiesen (BBO# 634827)<br>      Yvonne W. Chan (BBO# 669223)<br>      GOODWIN PROCTER LLP<br>      53 State Street<br>      Boston, MA 02109<br>      Telephone: 617.570.1000<br>      Facsimile: 617.570.1231<br><br>Attorneys for Plaintiff PRESIDENT AND FELLOWS OF HARVARD COLLEGE |
| DATED:  June 16, 2009 | K&L GATES LLP<br><br>By: /s/ *Michael E. Zeliger*<br><br>      Michael E. Zeliger (BBO# 633654)<br>      David A. Simons (BBO# 638740)<br>      Jackson Ho (BBO# 663413)<br>      K&L GATES LLP<br>      State Street Financial Center<br>      One Lincoln Street<br>      Boston, MA 02111-2950<br>      (617) 261-3100<br><br>Attorneys for Defendant DAKO DENMARK A/S AND DAKO NORTH AMERICA, INC. |

-12-

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on June 16, 2009.

*/s/ Amy Crafts*
Amy Crafts